UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| U.S. BANK, NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO LASALLE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF MLMI TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2006-MNLI,<br><br>   Plaintiff,<br><br>   v.<br><br>MICHAEL S. TUTTLE,<br><br>   Defendant,<br><br>JPMORGAN CHASE BANK, N.A., BANK OF AMERICA, N.A., KAMCO SUPPLY CORP. OF BOSTON, and MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF SUPPORT AND ENFORCEMENT AND RECOVERY,<br><br>   Parties-in-Interest. | 2:19-cv-00280-JAW |

**ORDER ON MOTION TO DISMISS**

A lender loaned a residential property owner $760,000 and obtained a promissory note from the borrower but failed to obtain title to the legally-enforceable mortgage to secure payment of the promissory note. When the borrower failed to pay in accordance with the terms of the promissory note, the lender's successor attempted to foreclose on the residential property asserting that the circumstances created an

equitable mortgage on the borrower's property. The Court grants the borrower's motion to dismiss the equitable mortgage count because the Maine Supreme Judicial Court does not recognize the concept of equitable mortgage in these circumstances.

I. **BACKGROUND**

   A. **Procedural Background**

On June 19, 2019, U.S. Bank, National Association, as Successor Trustee to Bank of America, N.A., as Successor by Merger to LaSalle Bank, N.A., as Trustee for the Certificateholders of MLMI Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-MNLI (U.S. Bank) filed a complaint against Michael S. Tuttle and Tamara Lea Tuttle, naming as parties-in-interest JPMorgan Chase Bank, N.A.; Bank of America, N.A.; KAMCO Supply Corp. of Boston; and the Maine Department of Health and Human Services, Division of Support and Enforcement and Recovery. *Compl.* (ECF No. 1). The Complaint asserted five counts against each defendant: breach of note; breach of contract, money had and received; quantum meruit; unjust enrichment; and equitable mortgage. *Compl.* ¶¶ 25-69.

On September 5, 2019, Mr. Tuttle answered the Complaint, *Def.'s Answer to Pl.'s Compl.* (ECF No. 16), and filed a motion to dismiss for failure to state a claim. *Def.'s Mot. to Dismiss Counts II, III, IV & V of Pl.'s Compl.* (ECF No. 17) (*Def.'s Mot.*).[1]

---

[1] Ms. Tuttle separately filed a motion to dismiss on September 24, 2019, *Def. Tamara Lea Tuttle's Mot. to Dismiss Pl.'s Compl. for Failure to State a Claim upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6) and to Dismiss Count V of Pl.'s Compl. as Moot Pursuant to Fed. R. Civ. P. 12(b)(1)* (ECF No. 19), which was mooted by her dismissal in U.S. Bank's Amended Complaint, filed on October 21, 2019. *Am. Compl.* (ECF No. 28). The Court dismissed Ms. Tuttle and her motion to dismiss that same day. *Order* (ECF No. 30). On October 22, 2019, U.S. Bank filed a notice of voluntary dismissal of its claim against Ms. Tuttle. *Notice of Voluntary Dismissal Without Prejudice as to Def. Tamara Lea Tuttle* (ECF No. 31).

On September 26, 2019, U.S. Bank filed a consent motion to extend its time to respond to Mr. Tuttle's Motion to Dismiss, stating that "[t]he Parties have engaged in extensive negotiating to limit the issue[s] before the Court which will be reflected in an Amended Complaint and Partial Opposition to Motion to Dismiss which will be filed on September 30, 2019." *Consented Mot. to Extend* (ECF No. 21).

On September 30, 2019, U.S. Bank filed a response to Mr. Tuttle's motion. *Opp'n to Def.'s Mot. to Dismiss Count V of Pl.'s Compl.* (ECF No. 23) (*Pl.'s Opp'n*). On October 10, 2019, Mr. Tuttle filed a reply. *Def.'s Reply to Pl.'s Obj. to Def.'s Mot. to Dismiss* (ECF No. 24) (*Def.'s Reply*). On October 18, 2019, U.S. Bank filed a consent motion to amend its complaint, *Consented to Mot. to Amend Compl.* (ECF No. 25), and on the same day the Magistrate Judge granted U.S. Bank's consent motion to amend the complaint. *Order Granting Mot. to Am. Compl.* (ECF No. 27). On October 21, 2019, U.S. Bank filed an amended complaint asserting only two counts against Mr. Tuttle: breach of note and equitable mortgage. *Am. Compl.* ¶¶ 24-43 (ECF No. 28). On the same day, Mr. Tuttle answered the Amended Complaint. *Def.'s Answer to Pl.'s Am. Compl.* (ECF No. 29).

B.   **Factual Background[2]**

Ms. Tuttle conveyed the property at 15 Ocean Avenue, town of Cape Elizabeth, Cumberland County, state of Maine, to Mr. Tuttle by a warranty deed on March 28,

---

[2]   On this motion to dismiss, the Court accepts as true the well-pleaded facts asserted in the amended complaint by the non-moving party, U.S. Bank, and draws all reasonable inferences in its favor. *See US Bank, N.A., as Legal Title Tr. for Truman 2013 SC3 Title Tr. v. HLC Escrow, Inc.*, 919 F.3d 17, 21 (1st Cir. 2019) (citing *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009)). The Court also considers documents appended to U.S. Bank's Complaint and Amended Complaint. *See Sterngold Dental, LLC v. HDI Glob. Ins. Co.*, 929 F.3d 1, 6 (1st Cir. 2019) ("When . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a

3

2018. *Am. Compl.* ¶ 10. On May 25, 2006, Mr. Tuttle "executed and delivered to Mortgage Lenders Network USA, Inc. [MLNUS] a certain Note in the amount of $760,000." *Id.* ¶ 11. This amount was "significantly below the property's value at that time . . .." *Id.* ¶ 36. The Amended Complaint is imprecise about how exactly U.S. Bank came to be the holder of the promissory note, but U.S. Bank alleges that it is "the proper holder of the Note and is entitled to enforce the terms and conditions of the Note due to its breach by the Defendant, Michael S. Tuttle." *Id.* ¶ 27.

Mr. Tuttle also "executed a Mortgage on May 25, 2006, which particularly referenced exactly the same property address of 15 Ocean Avenue, Cape Elizabeth, ME 04107, which was referenced on the aforesaid Promissory Note." *Id.* ¶ 38. U.S. Bank acknowledges in the Amended Complaint that the "aforesaid Mortgage is arguably unenforceable under current Maine Law pursuant to the *Greenlea[f]* decision." *Id.* ¶ 39 (citing *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700; *Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, 170 A.3d 230; *Pushard v. Bank of Am., N.A.*, 2017 ME 230, 175 A.3d 103).[3]

---

document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)" (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998))).

[3]     Before it filed for bankruptcy under Chapter 11, MLNUS was a mortgage originator and servicer. Although the facts in this case regarding MLNUS are not a matter of record, MLNUS would often serve as "the mortgage broker on [a] transaction and receive[] a commission for its services." *Kenney v. U.S. Bank, N.A.*, No. 17-11427-FDS, 2017 U.S. Dist. LEXIS 186007, at *2 (D. Mass Nov. 9, 2017). In addition, once MLNUS lent the money and received a commission, the mortgage itself was often held by Mortgage Electronic Registration Systems, Inc. (MERS). *See Stuart v. Mortg. Elec. Registration Servs.*, No., 2:17-cv-234-DBH, 2017 U.S. Dist. LEXIS 135705, at *1-2 (D. Me. Aug. 24, 2017). In *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, 2 A.3d 289 and *Greenleaf*, the Maine Supreme Judicial Court concluded that MERS "did not qualify as a mortgagee pursuant to [Maine's] foreclosure statute." *Greenleaf*, 2014 ME 89, ¶ 14 (quoting *Saunders*, 2010 ME 79, ¶ 11). Once MERS did not qualify as a mortgagee, the *Greenleaf* Court concluded that the note and mortgage were not held by the same entity and that the lender was not entitled to use Maine's foreclosure statute as a remedy for default on the note. *Greenleaf*, 2010 ME 79, ¶ 17. Although U.S.

On March 19, 2019, the law firm of Doonan, Graves & Longoria, LLC on behalf of U.S. Bank sent Mr. Tuttle a notice of mortgagor's right to cure, or demand letter. *Id.* ¶ 12; *Compl.*, Attach. 3 (*Demand Letter*). This demand letter informed Mr. Tuttle of "the payment due date, the total amount necessary to cure the default, and the deadline by which the default must be cured . . .." *Am. Compl.* ¶ 13; *see also Demand Letter* at 1-2. Mr. Tuttle failed to cure the default prior to the expiration of the deadline for cure specified in the demand letter. *Am. Compl.* ¶ 14. U.S. Bank is the present holder and lawful owner of the note, *id.* ¶¶ 15-16, which is indorsed in blank by Mortgage Lenders Network USA.[4] *See Compl.*, Attach. 2 at 4 (*Note*). The total debt owed under the note as of May 17, 2019, was $1,023,328.20. *Am. Compl.* ¶ 21. Mr. Tuttle was, at the time of the filing of the Amended Complaint, in possession of the property secured by the note, and was not in the military. *Id.* ¶¶ 22-23.

## II. POSITIONS OF THE PARTIES

### A. Michael S. Tuttle's Motion to Dismiss[5]

Mr. Tuttle asserts that "[a]n equitable mortgage arises when a property owner borrows money from another party and gives a deed (or possibly some sort of assignment in the case of personal property) to that lender." *Def.'s Mot.* at 4. "It is

---

Bank does not supply a copy of the mortgage, the Court accepts U.S. Bank's representation that it would not be able to prove the "chain of title for the aforesaid mortgage under *Greenleaf* and 33 M.R.S. § 508." *Am. Compl.* ¶ 40.

[4] *See U.S. Bank Trust, N.A., as Tr. for LSF11 Master Participation Tr. v. Cunningham*, No. 2:19-cv-00306-JAW, 2019 WL 6464619, at *2 (D. Me. Dec. 2, 2019) (stating that "[u]nder Maine law, section 3-1301 of title 11 'permits a party to enforce a note if it is the "holder" of the note, that is, if it is in possession of the original note that is indorsed in blank'" (quoting *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 10)).

[5] Because the issue before the Court has subsequently been limited to the equitable mortgage count of U.S. Bank's Amended Complaint, the Court recites only the portions of Mr. Tuttle's memorandum dealing with this issue.

5

not," in Mr. Tuttle's view, "a concept which has any meaning in this case," because "[u]nder an equitable mortgage theory involving the giving of a deed, if the parties have agreed that upon payment of the debt the original owner gets the real property conveyed by the deed back, then the aforementioned deed is really an equitable mortgage." *Id.*

Purportedly quoting *Seaman v. Seaman*, 477 A.2d 734 (Me. 1984), Mr. Tuttle writes that "[a] court will label a transaction an 'equitable mortgage' when there has been a conveyance of an interest in property and the facts surrounding the transfer indicate that the intent of the parties was that the conveyance was to be a security." *Def.'s Mot.* at 4 (quoting *Seaman*, 477 A.2d at 736).[6] Mr. Tuttle contends that "[i]n the Complaint in this case, there is not any suggestion that [Mr. Tuttle] executed and delivered to [U.S. Bank] anything like a deed or assignment which might be construed as an equitable mortgage." *Def.'s Mot.* at 4. "[O]ther than by the blank endorsement of the Promissory Note which [U.S. Bank] claims to hold, it appears that there are no writings whatsoever running from" Mr. Tuttle to U.S. Bank, but rather "a perfectly

---

[6] The Court could not find the quoted language in the Maine Supreme Judicial Court's *Seaman* opinion to which it is attributed. Instead, the Court located the language in *Thomsen v. Ward*, No. CV-11-14, 2012 WL 2335635 (Me. Super. Ct. June 4, 2012). For purposes of its binding effect on this Court, the difference between a Maine Supreme Judicial Court holding and a Maine Superior Court ruling is significant.

Rulings of the Law Court on issues of state law are mandatory authority for this Court to follow on matters of state law. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (stating that "the views of the state's highest court with respect to state law are binding on the federal courts"). Rulings of the Maine Superior Court, though influential, do not have a precedential impact. *See Vt. Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 42 (1st Cir. 2013) (stating that "decisions of a state's intermediate appellate court are not binding on a federal court sitting in diversity" (quoting *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 55 (1st Cir. 2008)).

Here, although counsel misattributes the quoted language as coming from the Maine Supreme Judicial Court, the Court does not perceive a significant difference between the Law Court's discussion of equitable mortgage and the Superior Court's definition.

6

proper mortgage from [Mr. Tuttle] to Mortgage Lenders Network USA, Inc." *Id.* at 4-5 (footnote omitted). According to Mr. Tuttle, the mortgage "exists to this day, even if it is not . . . owned by" U.S. Bank. *Id.*

Additionally, Mr. Tuttle states that, though U.S. Bank may be the holder of Mr. Tuttle's note, "there is nothing in the note itself, or in any of the ineffectual recorded mortgage assignments which effectuates or purports to effectuate, the assignment or transfer to [U.S. Bank] from Mortgage Lenders Network USA, Inc. of the cause[] of action which [U.S. Bank] now asserts . . .." *Id.* at 6. Therefore, in Mr. Tuttle's view, U.S. Bank does not have standing to proceed on an equitable mortgage theory, as that cause of action has not been assigned to it. *Id.*

### B. U.S. Bank's Response

U.S. Bank begins by discussing the standard of review on a motion to dismiss for failure to state a claim. *Pl.'s Opp'n* at 2. U.S. Bank then states that "Maine is a mortgage title state," *id.* (citing *Jordan v. Cheney*, 74 ME 359, 361 (1883)), and that "the concept of equitable mortgage is well founded in Maine as an alternative to a legal mortgage." *Id.* (citing *Hawes v. Williams*, 92 ME 483, 43 A. 101 (1899)). It also argues that "it is the intent of the parties at the inception of the transaction" that controls whether an equitable mortgage arises, *id.* at 2-3 (citing *Seaman*, 477 A.2d at 736; *Sposedo v. Merriman*, 111 ME 530, 90 A. 387, 392 (1914)), particularly where the relationship is long-term. *Id.* at 3 (citing *Norton v. Berry*, 120 ME 536, 115 A. 287, 289 (1921)). U.S. Bank asserts that the equitable mortgage concept "is a broad one encompassing 'Any written evidence of conveyance' or even oral testimony." *Id.*

7

at 3 (quoting *Braddock v. McBurnie*, 152 ME 39, 41, 122 A.2d 319, 320 (1956)). U.S. Bank further notes that "the Law Court of Maine has recently left this issue open for further interpretation" in the case of *Federal National Mortgage Association v. Deschaine*, 2017 Me. 190, ¶ 14 n.4, 170 A.3d 230. *Pl.'s Opp'n* at 3.

U.S. Bank argues that Mr. Tuttle is "asking this Court to consider whether [U.S. Bank] can ultimately recover" on the equitable mortgage theory but that that question is premature because "it is conceivable that relief could be granted on this ground . . .." *Id.*

### C. Michael S. Tuttle's Reply

Mr. Tuttle argues that the cases cited by U.S. Bank in its opposition do not "apply to the present matter" because in each of those cases, "there was a writing of some sort between the 'equitable mortgagor' and the 'equitable mortgagee'" and "an agreement between the parties," but no such writing or agreement exists here. *Def.'s Reply* at 1-2. Mr. Tuttle notes U.S. Bank's citation of *Deschaine*, but states that arguably, the Law Court's decision in *Beal Bank USA v. New Century Mortgage Corporation*, 2019 ME 150, 217 A.3d 731 (*Beal II*), foreclosed the possibility of an equitable mortgage in cases with these facts. *Def.'s Reply* at 2. Mr. Tuttle points out several similarities between this case and *Beal II*: (1) the original mortgagee is no longer in existence; (2) the original mortgage lender has been dissolved in bankruptcy; and (3) "no one knows who 'owns' the mortgage in question . . .." *Id.* Therefore, Mr. Tuttle suggests that "this Court should no more undertake to effectively assign [the mortgage] to [U.S. Bank], calling it an 'equitable mortgage'

8

than the Maine Court allowed in *Beal* . . ..." *Id.* Mr. Tuttle responds to U.S. Bank's assertion that dismissal of the equitable mortgage claim would be premature by stating that there are no facts in U.S. Bank's Complaint which show "any sort of writing which could be equitably transformed into a mortgage between" the parties, and that without such facts, "[U.S. Bank] simply lacks any standing to pursue a foreclosure of any sort of mortgage, legal or equitable, under Maine law." *Id.* at 2-3.

### III. Legal Standard

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted . . .." FED. R. CIV. P. 12(b)(6). In order to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), that is, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must first "distinguish 'the complaint's factual allegations . . . from its conclusory legal allegations (which need not be credited),'" *García–Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)), and then "must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

When determining an issue of state law in the absence of controlling authority from that state's highest court, the Court "must make an 'informed prophecy' as to how the state's highest court . . . would rule if faced with the issue." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 21 (1st Cir. 2018) (quoting *Sanders v. Phoenix Ins. Co.*, 843 F.3d 37, 42 (1st Cir. 2016)). In order to do so, the Court "may look to 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the [state's highest court] would decide the issue at hand.'" *Id.* (quoting *N. Am. Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 38 (1st Cir. 2001)).

## IV. DISCUSSION

In *Beal II*, reaching back to 1883, the Maine Supreme Judicial Court reiterated Maine's definition of the "equitable trust doctrine":

> One who takes a mortgagee's title holds it in trust for the owner of the debt to secure which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes.

2019 ME 150, ¶ 7 (quoting *Jordon v. Cheney*, 74 Me. 359, 361 (1883)). The question is whether Maine would currently apply the equitable trust doctrine to the facts in this case. After reviewing *Beal II*, the Court concludes that the Maine Law Court would not permit a cause of action for equitable mortgage to lie on these facts.[7] The Court turns to *Beal II*.

---

[7] To the extent U.S. Bank is arguing that the equitable mortgage it seeks in this case is different from an equitable trust, the Court is dubious. As the Maine Law Court implies by quoting *Jordon*, an equitable mortgage is a form of equitable trust.

10

In *Beal II*, the homeowners originally signed a promissory note listing New Century Mortgage Corporation as the lender and, to secure the note, the homeowners executed a mortgage "that identified New Century as the 'lender' and Mortgage Electronic Registration Systems, Inc. (MERS) as the 'nominee' for the lender." 2019 ME 150, ¶ 3. The note was "transferred several times and eventually obtained by LNV Corporation, which held the note at the commencement of [the *Beal* lawsuit]." *Id.* Later, Beal Bank USA was substituted as plaintiff. *Id.*

The mortgage traveled a different path. MERS purported to assign the mortgage to LNV. *Id.* LNV (later Beal) filed suit "alleging that it was the equitable owner of the mortgage because New Century held any interest it had in the mortgage in trust for LNV, as holder of the note." *Id.* The lawsuit sought to force New Century to assign "any interest" it held in the mortgage to LNV [Beal]." *Id.* To add to the potential complexity, New Century filed for Chapter 11 bankruptcy in April 2007 and there was "no evidence that New Century retained the homeowner's mortgage after issuance of the final bankruptcy order and termination of the bankruptcy estate." *Id.* ¶ 2 n.3.

In the complaint in *Beal*, the plaintiff alleged that the underlying mortgage "was assigned by MERS to [the plaintiff] by assignment," but that "[i]n light of the Maine Supreme Judicial Court's holding in *Bank of America v. Greenleaf*, 2014 ME 89, [96 A.3d 700], [the defendant] may be deemed to retain an interest in the Mortgage." *Compl. to Compel Assignment Title to Real Estate Is Involved* ¶¶ 6-7, *LNV Corp. v. New Century Mortg. Corp.* (Me. Super. Ct.) (No. RE-16-109), 2016 WL

11

11477245. Therefore, in the plaintiff's view, "[a]ny interest in the Mortgage held by [the defendant] [wa]s held in trust for the benefit of the Plaintiff as the holder of the Note," and so "the Plaintiff [wa]s the equitable owner of the Mortgage" and could "compel an assignment" of the mortgage to itself. *Id.* ¶¶ 8-10. The plaintiff therefore brought an action to compel assignment against the initial mortgagee. *Beal Bank USA v. New Century Mortg. Corp.*, No. RE-16-109, 2018 WL 1881955, at *1 (Me. Super. Ct. Mar. 4, 2018) (*Beal I*).

The Law Court characterized the plaintiff's position as being that "because it holds the note and is unable to obtain the mortgage by other means as a result of [the defendant's] bankruptcy, and because [the defendant], as the mortgagee, holds the mortgage 'in trust' for [the plaintiff's] benefit, [the plaintiff] can therefore compel the assignment of the legal title to the mortgage." *Beal II*, 2019 ME 150, ¶ 8 (footnote omitted). The Law Court explicitly rejected the proposition (implicitly rejected in *Greenleaf*, 2014 ME 89, ¶¶ 10-17) that "the equitable trust doctrine effectively establishes ownership of a mortgage in the holder of its accompanying note." *Id.* ¶¶ 14-15. The Law Court stated that the "logical conclusion" of the plaintiff's argument would require it to hold that "once a party becomes the 'holder' of a note secured by a mortgage, that status would operate to automatically transfer ownership of the mortgage to that party," a concept the Law Court "implicitly rejected in *Greenleaf* and which would render [its] bifurcated standing analysis of the holder of the note and the owner of the mortgage entirely superfluous." *Id.* ¶ 14 (footnote omitted). The Law Court held that "although the holder of the note may retain *some equitable*

12

*interest* in the accompanying mortgage, any such interest, standing alone, does not equate to actual *ownership* of the mortgage . . ..." *Id.* ¶ 15 (emphasis in original).

First, unlike the facts in *Beal II*, U.S. Bank's allegations leave a hole that U.S. Bank never filled in. The Maine Supreme Judicial Court explained that "standing to foreclose involves the plaintiff's interest in both the note and the mortgage." *Greenleaf*, 2014 ME 89, ¶ 9. For purposes of the motion to dismiss, the Court is able to accept U.S. Bank's allegation that it is the holder of the promissory note and entitled to enforce it. *Am. Compl.* ¶ 27. However, there is no similar allegation in the Amended Complaint concerning the transactional history of the mortgage. In fact, U.S. Bank never expressly states who the original mortgagee was and where ownership of the mortgage was later transferred, if it was later transferred. Instead, the only allegation about the mortgage is that it "is arguably unenforceable under current Maine Law . . .." *Id.* ¶ 39. For purposes of ruling on the motion to dismiss, therefore, the Court accepts the Amended Complaint's allegation that U.S. Bank holds the promissory note and that it does not hold the mortgage. Under *Greenleaf*, therefore, U.S. Bank would not be able to proceed with a statutory foreclosure in Maine.

The question then becomes whether Maine law allows a court to impose an equitable mortgage on the property, where the holder of the note does not hold the mortgage. Unfortunately for U.S. Bank, the Court views *Beal II* as concluding that Maine law would not apply the doctrine of equitable mortgage to the circumstances in this case. Just as in *Beal II*, U.S. Bank is attempting to establish an equitable

ownership of the mortgage based purely on its possession of the note. U.S. Bank's request that the Court impose an equitable mortgage on the property is not materially different from the request in *Beal II* that that court compel the assignment of an existing mortgage to the plaintiff. *Beal II* makes clear that any equitable interest held by the holder of the note in the accompanying mortgage is not enough, without more, to "equate to actual ownership of the mortgage." *Id.* The Court can no more create a new mortgage on the basis of U.S. Bank's possession of the note than it can compel assignment of the existing mortgage. To find that possession of the note is sufficient to create in the possessor an ownership interest in the mortgage would render *Greenleaf* and its "bifurcated standing analysis of the holder of the note and the owner of the mortgage entirely superfluous." *Id.* ¶ 14. This the Court may not do.

## V. CONCLUSION

The Court DISMISSES as moot Michael S. Tuttle's Motion to Dismiss Counts III, IV & V of Plaintiff's Complaint (ECF No. 17), GRANTS his Motion to Dismiss Count II (ECF No. 17), and ORDERS that Count II of U.S. Bank's Amended Complaint (ECF No. 28) be DISMISSED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of December, 2019